UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                              :     Chapter 15
                                                    :
MADISON NICHE ASSETS                                :     Case No. 16- 10043   (___)
FUND, LTD. (IN OFFICIAL                             :
LIQUIDATION),[1] *et al.*,                          :     (Joint Administration Requested)
                                                    :
              Debtors in                            :
              Foreign Proceedings.                  :
                                                    :
                                                    :
------------------------------------------------------------x

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN INSOLVENCY PROCEEDINGS AND APPLICATION FOR ADDITIONAL RELIEF PURSUANT TO SECTIONS 1504, 1509, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE

Matthew James Wright and Christopher Barnett Kennedy, duly appointed joint official liquidators and authorized foreign representatives (**"Petitioners"** or **"Official Liquidators"**) of Madison Niche Opportunities Fund, Ltd. (in Official Liquidation) (**"Opportunities Fund"**) and Madison Niche Assets Fund, Ltd. (in Official Liquidation) (**"Assets Fund"** and together with Opportunities Fund, the **"Funds"**), both Funds in liquidation under the supervision of the Financial Services Division of the Grand Court of the Cayman Islands (the **"Grand Court"**) (cause nos. FSD 0035 of 2015 (ASQC) (re the Assets Fund) and 0036 of 2015 (ASQC) (re the Opportunities Fund)) as a result of the Grand Court's orders (the **"Supervision Orders"**) made pursuant to the Official Liquidators' petitions for the Grand Court's supervision under section 131 of the Companies Law of

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses:  Madison Niche Assets Fund, Ltd. (in Official Liquidation) (1425) and Madison Niche Opportunities Fund, Ltd. (in Official Liquidation) (0084).  The Funds' registered office is 2nd Floor, Windward 1, Regatta Office Park, P.O. Box 897, Grand Cayman, KY1-1103.

the Cayman Islands (2013 Revision) (the "**Companies Law**")[2] (collectively, the "**Cayman Liquidations**") by its undersigned United States counsel, Holland & Knight LLP and Young Conaway Stargatt & Taylor, LLP, respectfully submits the Official Form Petition, this Verified Petition (together, the "**Petition**"), the accompanying Declaration of Christopher Barnett Kennedy executed on December 18, 2015 (the "**Kennedy Declaration**"), the Declaration of Barnaby Gowrie, executed on December 18, 2015 (the "**Gowrie Declaration**"), and the Declaration of Warren E. Gluck, executed on December 18, 2015 (the "**Gluck Declaration**" and, together with the Kennedy Declaration and the Gowrie Declaration, the "**Declarations**"), for entry of an Order pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

    (i)      recognizing the Cayman Liquidations as foreign main proceedings, or in the alternative, foreign nonmain proceedings, pursuant to chapter 15 of the Bankruptcy Code, and Petitioners as the Funds' foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

    (ii)     granting relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

1.      Chapter 15 of the Bankruptcy Code "is intended to provide greater legal certainty for trade and investment as well as to provide for fair and efficient administration of cross-border insolvencies, which protects the interests of creditors and other interested parties, including the debtor." *In re ABC Learning Centres Ltd.*, 728 F.3d 301, 305 (3d Cir. 2013) *cert. denied sub nom. RCS Capital Dev., LLC v. ABC Learning Centres Ltd.*, 134 S. Ct. 1283, 188 L. Ed. 2d 300 (2014) (quoting H.R.Rep. No. 109–31(1), at 105 reprinted in 2005 U.S.C.C.A.N. 88, 169 (2005)). *See also* 11 U.S.C. § 1501(a)(3). To that end, the Official Liquidators request recognition of the Cayman Liquidations as foreign main proceedings primarily to obtain this Court's assistance in enforcing the

---

[2] Excerpts of the relevant provisions of the Companies Law are attached as Exhibit A to the Gowrie Declaration.

stay of proceedings and actions against the Funds and property of their estates as ordered by the Grand Court through the Supervision Orders. Recognition of the Cayman Liquidations as foreign main proceedings would confer upon the Funds the protection of sections 362 and 1520 of the Bankruptcy Code, thereby preventing any one creditor from gaining an advantage over similarly situated creditors or otherwise interfering with the Cayman Liquidations and implementation of orders of the Grand Court.

2.      As this Petition, the accompanying Declarations and the exhibits thereto demonstrate, the Cayman Liquidations should be recognized as foreign main proceedings. In the event that the Cayman Liquidations are recognized as foreign nonmain proceedings, this Court has the discretion to order the protections and relief it deems appropriate pursuant to sections 1507 and 1521 of the Bankruptcy Code - including the requested stay of the continuation of actions or proceedings against the Funds' assets. 11 U.S.C. § 1521(a).

3.      The Official Liquidators seek precisely the type of relief that chapter 15 was designed to provide, and the Cayman Liquidations and this Petition meet all the requirements for recognition and the requested relief. In particular, the Official Liquidators were appointed by the Grand Court to administer Funds' assets, liabilities, and any ongoing business occurring in connection with the court-ordered Cayman Liquidations of the Funds pursuant to the Companies Law, a law relating to insolvency or adjustment of debt. *Kennedy Declaration*, ¶ 38.

4.      Likewise, the Cayman Liquidations are collective judicial proceedings as referenced in 15 U.S.C. § 101(23), subject to the oversight and control of the Grand Court, encompassing all creditors and stakeholders of the Funds, which are pending in the Cayman Islands, the country in which both Assets Fund and Opportunities Fund were formed, maintains registered offices, maintains their center of main interests ("**COMI**"), and where the Official Liquidators are engaged in

substantial, non-transient economic activity associated with the wind-down and liquidation of the Funds' businesses and affairs. *Kennedy Declaration*, ¶¶ 41-53.

5.    Pursuant to section 1516(c) of the Bankruptcy Code, the Cayman Islands are presumed to be the Funds' COMI because the Funds were incorporated there and maintain their registered office there. *Kennedy Declaration*, ¶¶ 10, 12, 42. This Petition and the accompanying Declarations further demonstrate that the Funds' counterparties and creditors had clear and actual knowledge that each of the Funds was a Cayman Islands entity. *Kennedy Declaration*, ¶ 44. Since the commencement of the Cayman Liquidations, the Cayman Islands are the obvious and demonstrable "nerve center" of the Funds' ongoing liquidation. Hence, the Cayman Liquidations are "foreign main proceedings" within the meaning of sections 101(23), 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code.

6.    This and other Courts have recognized similar liquidation proceedings of Cayman Island entities as foreign main proceedings. *See, e.g., In re LDK Solar Co., Ltd.*, No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014) (recognizing Cayman Islands liquidation as foreign main proceeding); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) (same); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (commencement of Cayman Islands proceedings, together with subsequent activities of liquidators had the effect of transferring holding company's COMI to Cayman); *In re Millard*, 501 B.R. 644, 647 (Bankr. S.D.N.Y. 2013); *In re AJW Offshore Ltd.*, No. 13-70078, (Bankr. E.D.N.Y. Feb. 5, 2013); *In re Bancredit Cayman Ltd. (in Liquidation)*, No. 06-11026 (SMB) (Bankr. S.D.N.Y. June 16, 2006).

7.    For all of these reasons and as will be shown below, the Official Liquidators respectfully submit that: (i) the Cayman Liquidations are foreign main proceedings within the meaning of sections 101(23) and 1502(4) of the Bankruptcy Code; (ii) the Official Liquidators are the

duly appointed foreign representatives of the Funds within the meaning of section 101(24); (iii) the Official Liquidators and the Petition comply with all the requirements of section 1515 and Bankruptcy Rule 1007(a)(4); and (iv) recognition of the Cayman Liquidations would not be contrary to public policy under Bankruptcy Code section 1506.

8.      Under the circumstances, this Court can and should enter an order recognizing the Cayman Liquidations as foreign main proceedings under section 1517(b)(l), or in the alternative, as foreign nonmain proceedings under section 1517(b)(2) of the Bankruptcy Code, and granting additional relief as set forth in section 1521 of the Bankruptcy Code.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, sections 109 and 1501 of the Bankruptcy Code and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.

10.     Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1410 because there is an action pending against the Funds within this District.

11.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

12.     The statutory predicates for the relief requested herein are sections 105(a), 362, 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## FACTUAL BACKGROUND

I.      **The Funds' Pre-Liquidation Business**

13.     The Funds were incorporated as exempted limited companies under the laws of the Cayman Islands: the Opportunities Fund was incorporated on September 23, 2002, and the Assets Fund on November 8, 2004. *Gowrie Declaration*, ¶ 10. While the Funds were formerly registered as

mutual funds and regulated by the Cayman Islands Monetary Authority ("**CIMA**"), both Funds' CIMA licenses were terminated following their entry into voluntary liquidation. *Gowrie Declaration*, ¶ 11.

14.    Following the Funds' entry into voluntary liquidation, the Funds' registered addresses were changed from c/o DMS House, 20 Genesis Close, P.O. Box 314, Grand Cayman, KY1-1104 to c/o The R&H Trust Co. Ltd., Windward 1, Regatta Office Park, PO Box 897, Grand Cayman KY1-1103, Cayman Islands. *Gowrie Declaration*, ¶ 12.

15.    The Funds belong to a group of companies (the "**Madison Group**") that is ultimately controlled by Madison Capital Management, LLC ("**Madison**"). Each of the Funds, via a number of intermediary vehicles, holds shares in special purpose vehicles set up to own and operate specific assets into which the Funds' participating shareholders are ultimately invested (the "**Opcos**"). *Kennedy Declaration*, ¶ 9.

16.    The Funds serve as feeder funds for: in the case of the Opportunities Fund, Madison Niche Opportunities Master Fund, Ltd. (in Voluntary Liquidation) ("**MNOMF**"); and in the case of the Assets Fund, Madison Niche Assets Master Fund, Ltd. (in Voluntary Liquidation) ("**MNAMF**" and together with MNOMF, the "**Master Funds**"). *Gowrie Declaration*, ¶ 13.

17.    In addition to the Funds, two further funds act as feeder funds into the Master Funds. They are both registered in Delaware and are known as: Madison Niche Opportunities Fund, LLC (in Voluntary Liquidation), which feeds into MNOMF ("**MNOF LLC**"); and Madison Niche Assets Fund, LLC (in Voluntary Liquidation), which feeds into MNAMF ("**MNAF LLC**" and together with MNOF LLC, the "**Onshore Feeder Funds**"). *Gowrie Declaration*, ¶ 14.

18.    By the Funds' offering documents, namely, Explanatory Memorandums dated February 2007 (the "**Offering Documents**"), the Funds offered Participating Shares to prospective investors. The Funds' investment objective was defined in the Offering Documents as follows:

> to provide investors with superior risk-adjusted returns and low volatility by investing in non-traditional securities and financial instruments purchased from the issuer or originator or in the secondary market, and that are, in most cases, related to, backed by or derive value from real estate assets and are purchased at a discount to value, or are high-yield oriented….

*Kennedy Declaration*, ¶ 16.

19.    The investment strategy of the Funds was defined as follows:

> to acquire generally, indirectly through an investment in the Master Fund, non-traditional securities and financial instruments (a) that are, except as described in this paragraph, related to, backed by or derive value from real estate as determined by the Investment Manager, (b) not typically actively traded on any exchange, and (c) that generally exhibit at least one of the following four characteristics: (I) fractionalization (*i.e.*, the Fund aggregates small, fractionalized securities and financial instruments directly from a myriad of small holders), (II) institutionally overlooked (*i.e.*, the Fund focuses on securities and financial instruments with limited institutional investor/broker interest and/or suitability and no "street" research coverage), (III) illiquidity (*i.e.*, the Fund provides liquidity to holders of illiquid financial instruments), or (IV) capital supply constraints (*i.e.*, the Fund makes high-yield investments in niches of the real estate market which are underserved because of small transaction sizes, non-conventional asset classes, complex/unusual transaction terms, short investment duration, unconventional underwriting parameters, etc.)….

*Kennedy Declaration*, ¶ 17.

20.    The assets of each of the Funds consist solely of the shares of the corresponding Master Fund that it feeds. As such, the financial position of each Fund is dependent upon the performance of the Master Fund in which it holds an interest and, in turn, the value of the assets in which the Master Fund holds interests. Through the Master Funds and certain intermediary holding companies, the Funds are invested in the following Opcos:

> a.    Madison Vineyard Holdings, LLC, a Delaware limited liability company concerning the ownership and operation of a vineyard located in Napa Valley,

           California known as the Jamieson Ranch ("**JRV**"). With respect to this asset, Opportunities Fund holds a 37.9% interest, and Assets Fund holds a 56.5% interest;

b.      Madison Fort Lauderdale, LLC, a Delaware limited liability company concerning the ownership of development-potential real estate located in Fort Lauderdale, Florida known as Hampton Inn ("**Fort Lauderdale**"). With respect to this asset, Opportunities Fund holds a 54.8% interest, and Assets Fund holds a 39.5% interest;

c.      Red Mesa Holdings / O&G, LLC, a Delaware limited liability company which owns and operates oil and gas drilling concerns located in La Plata County, Colorado ("**Red Mesa**"). Opportunities Fund holds a 90.3% interest in Red Mesa, and Assets Fund does not hold an interest in it (as described more fully below);

d.      United American Energy, LLC, a Delaware limited liability company that owns and operates oil and gas drilling concerns located in Beattyville, Kentucky. Opportunities Fund holds an **88.8%** interest with respect to this asset, and Assets Fund is not invested in this asset; and

e.      Sagebrush Holdings / O&G LLC, a Delaware limited liability company that owns and operates oil and gas drilling concerns located in North Dakota. Opportunities Fund holds a 90.2% interest with respect to this asset; Assets Fund is not invested in this asset.

*Kennedy Declaration*, ¶ 18.

## II.     **Events Leading Up to the Cayman Liquidations**

21.     On July 1, 2014, the sole ordinary voting shareholders of both Funds (together, the "**Shareholders**") passed resolutions as special written resolutions, in each case providing that the business and affairs of the Funds be voluntarily wound up in accordance with section 116(c) of the Companies Law, and that the Official Liquidators be appointed as the joint voluntary liquidators of the Funds. *Gowrie Declaration*, ¶ 17.

22.     As required by the Companies Law, the Petitioners (acting then in their capacities as the joint voluntary liquidators of the Funds) filed consents to act as the voluntary liquidators of the

Funds;[3] directors' solvency declarations;[4] and notices of winding up with the Registrar of Companies[5] (the "**Registrar**") on July 1, 2014. They also placed notice of their appointments in the *Cayman Islands Gazette*,[6] which was published on July 14, 2014. *Gowrie Declaration*, ¶ 24.

23.    After the Funds' entry into voluntary liquidation and the appointment of the Petitioners as joint voluntary liquidators of the Funds, the Petitioners determined that petitioning the Grand Court for an order that the liquidation of the Funds be brought under its supervision was necessary in order to best serve the interests of the Funds and their respective creditors. The Petitioners reached this conclusion based upon their analysis of all relevant factors, including the bankruptcy of Red Mesa and the escalating dispute arising out of the Consulting Agreement, each as described below. *Kennedy Declaration*, ¶ 26.

        A.    *Red Mesa*

24.    Red Mesa was rendered insolvent due to various sources of financial stress, including a rapid decline in oil prices in mid to late 2014, the depression of gas value due to overproduction, and the initiation of an intervention action by the Colorado Oil and Gas Conservation Commission ("**COGCC**") through which the COGCC demanded that Red Mesa post additional statutory financial assurance bonds with respect to capping abandoned wells. *Kennedy Declaration*, ¶ 27.

25.    Red Mesa ultimately filed a petition for relief under chapter 7 of the Bankruptcy Code before this court (Case No. 15-10570-KJC). *Kennedy Declaration*, ¶ 28. The Official Liquidators were advised by their United States legal advisors that, due to Red Mesa's insolvency and status as a chapter 7 debtor, there was a risk that the COGCC could seek to enforce its financial sanctions

---

[3] Section 123 (1)(b) of the Companies Law.
[4] Section 123 (1)(c) of the Companies Law.
[5] Section 123 (1)(a) of the Companies Law.
[6] Section 123 (1)(e) of the Companies Law.

imposed upon Red Mesa by attaching other assets of Opportunities Fund, including those in which Assets Fund is co-invested, thereby threatening the value of both of the Funds. Faced with this risk, the Official Liquidators determined that the Funds should seek the protection offered by the supervision of the Grand Court. *Kennedy Declaration*, ¶ 29.

B.    *The Consulting Agreement*

26.    Following the Funds' entry into voluntary liquidation, the Funds, acting by the Petitioners, entered into a consulting agreement with TMC Consulting Services, LLC ( "**TMC**"), dated July 1, 2014, as subsequently amended and restated on September 23, 2014 and October 25, 2014 (the "**Consulting Agreement**") (attached as Exhibit B to the Kennedy Declaration). Under the Consulting Agreement, the terms of which were settled by the Funds' former directors prior to the appointment of the Petitioners, TMC (also a member of the Madison Group) agreed to provide management services for the Funds and the Opcos, for an initial monthly fee of $708,333.00 (the "**Consulting Fees**"). The Consulting Fees were significantly less than the asset management fees previously charged by TMC prior to the appointment of the Official Liquidators, and were further designed to ratchet downwards under the terms of the Consulting Agreement as each of the assets owned by the Opcos were disposed of, in line with the Funds' liquidation strategies. *Kennedy Declaration*, ¶¶ 31, 32.

III.    **The Cayman Liquidations and Cayman Islands Insolvency Law**

27.    On March 6, 2015, the Petitioners, acting then in their capacities as joint voluntary liquidators of the Funds, issued petitions (the "**Supervision Petitions**," attached as Exhibit A to the Kennedy Declaration) to the Grand Court under section 131 of the Companies Law seeking, among other orders, orders that: the voluntary liquidation of the Funds continue under the supervision of the Grand Court; Messers. Wright and Kennedy be appointed as the Official Liquidators of the Funds;

and the Petitioners be granted certain powers in their capacities as the official liquidators of the Funds as described in the Supervision Petitions and as will be discussed in greater detail below. *Gowrie Declaration*, ¶ 20. As referenced above, on March 11, 2015, the Grand Court made the Supervision Orders on the terms requested through the Supervision Petitions. *Gowrie Declaration*, ¶ 21.

28.     The substantive law relating to the winding up of companies incorporated in the Cayman Islands is contained in Part V of the Companies Law. *Gowrie Declaration*, ¶ 26. The provisions of Part V apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies. *Gowrie Declaration*, ¶ 26.

29.     The substantive law contained in Part V of the Companies Law is supplemented by detailed rules governing the practice and procedure for insolvencies of companies that are set out in the Company Winding Up Rules 2008 (as amended) ("**CWR**"), the Insolvency Practitioners Regulations 2008 (as amended) ("**IPR**") and the Grand Court Rules 1995 (as revised) ("**GCR**"). *Gowrie Declaration*, ¶ 26.

30.     Under the Companies Law, a company may be wound up by the Grand Court if, among other things, the voluntary liquidator of a company petitions the Grand Court for an order that the winding up of the company continue under the Grand Court's supervision. Such a petition is usually made on the grounds that the company is or is likely to become insolvent or if the voluntary liquidator believes that the Grand Court's supervision will facilitate a more effective, economic or expeditious liquidation of the company, in the interests of shareholders and creditors.[7] In the case of the Funds, they both entered into Grand Court-supervised liquidation pursuant to this mechanism following issuing of the Supervision Petitions by the

---

[7] Section 131 of the Companies Law.

Petitioners (acting then in their capacities as voluntary liquidators of the Funds). *Gowrie Declaration*, ¶ 30.

31.    As fiduciaries and officers of the Grand Court, the Official Liquidators' duties pursuant to section 110 of the Companies Law are to: (a) collect, realise and distribute the assets of the Funds to its creditors and if there is a surplus, to contributories, and (b) to report to the Funds' creditors and contributories upon the affairs of the Funds and the manner in which they are being wound up. [8] *Gowrie Declaration*, ¶ 34.

32.    Except as otherwise ordered by the Grand Court, Schedule 3 to the Companies Law sets out the powers that the Official Liquidators may exercise with and without the supervision of the Grand Court. *Gowrie Declaration*, ¶¶ 35-36.

33.    Generally, the Official Liquidators are authorized and empowered to take the following actions subject to the Grand Court's supervision:

    a.    Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

    b.    Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

    c.    Power to dispose of any property of the company to a person who is or was related to the company.

    d.    Power to pay any class of creditors in full.

    e.    Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

    f.    Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between

---

[8] Section 110 of the Companies Law.

the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

g.  Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

h.  The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

i.  The power to raise or borrow money and grant securities therefor over the property of the company, the power to engage staff (whether or not as employees of the company) to assist them in the performance of their functions.

j.  The power to engage attorneys and other professionally qualified persons to assist them in the performance of their functions.

*Gowrie Declaration*, ¶ 35 (citing Companies Law, section 110, Schedule 3, Part I).

34.      Schedule 3, Part II of section 110 of the Companies Law further provides that the

Official Liquidators are permitted to exercise the following powers without the Grand Court's

sanction:

a.  The power to take possession of, collect and get in the property of the company and for that purpose to take all such proceedings as the Official Liquidators consider necessary.

b.  The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

c.  The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against the Funds' estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.

d.  The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

e.  The power to promote a scheme of arrangement pursuant to section 86.

f.  The power to convene meetings of creditors and contributories.

g.  The power to do all other things incidental to the exercise of their powers.

*Gowrie Declaration*, ¶ 36 (citing Companies Law, section 110, Schedule 3, Part II).

35.     In this case, the Grand Court has authorized the Official Liquidators to exercise certain of the Schedule 3 powers without supervision. In particular, the Grand Court has authorized the Official Liquidators to: (i) bring or defend legal proceedings in the name of or on behalf of the Funds; (ii) carry on the business of the Funds so far as may be necessary for their winding up; (iii) dispose of any property of the Funds to a person who is or was related to the Funds; (iv) pay any class of creditors in full; (v) compromise with creditors having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the Funds for which the Funds may be liable; (vi) compromise debts and liabilities between the Funds and a contributory or alleged contributory or other person apprehending liability to the Funds; (vii) deal with all questions in any way relating to or affecting the assets of winding up of the Funds, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge with respect thereto; (viii) sell any of the Funds' property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels; (ix) raise or borrow money and grant security over the Funds' property; and (x) engage staff and attorneys in various jurisdictions to assist the Official Liquidators in the performance of their functions from time to time as may be necessary. *See* Supervision Orders, ¶ 4.

36.     Under the Companies Law, the Official Liquidators are also empowered to investigate (i) the causes for the failure of the Funds' business, as well as (ii) generally, the promotion, business, dealings and affairs of the Funds. *Gowrie Declaration*, ¶ 37 (citing Companies Law, section 102). A key principle underlying the Companies Law and the Cayman Liquidations is that the claims of

investors and creditors within the same class are treated on a *pari passu* basis. *Gowrie Declaration*, ¶ 31 (citing Companies Law, section 140).

37.    Cayman liquidation proceedings are fair and equitable. All creditors may have an opportunity to be heard by the Grand Court and no creditor will be prejudiced because it is foreign-based. *Gowrie Declaration*, ¶ 33.

38.    Section 97(1) of the Companies Law provides that upon the entry of a winding up order, no suit or other proceeding may be commenced or continued against the company except with leave of the Grand Court and subject to such terms as that Court might impose. This automatic stay mirrors the stay imposed in U.S. bankruptcy proceedings and serves to promote the Official Liquidators' ability to deal with claims and creditors collectively and comprehensively. *Gowrie Declaration*, ¶ 32.

**IV.    Events Leading Up to the Petition**

39.    Upon the entry of the Supervision Orders, the Official Liquidators took the various steps required under the Companies Law and the CWR, including the publication of statutory notices and the convening of meetings of creditors of the Funds. At the first meeting of the creditors of the Funds, liquidation committees, comprised by nominated representatives of the Funds' investors, were elected (the "**Liquidation Committees**"). The Liquidation Committees continue in their role of assisting the Official Liquidators; they are both aware of and support the presentation by the Official Liquidators of the Petition. *Kennedy Declaration*, ¶ 30.

40.    After their formation, the Liquidation Committees began to express concern to the Official Liquidators over the Consulting Fees, and requested that the Official Liquidators conduct a review of previous payments made by the Funds to other members of the Madison Group, including management fees, consultancy fees, disposal bonuses, and participation fees. Once recognition is

obtained, the Official Liquidators contemplate engaging in discovery, *inter alia,* with respect to the United States-based management of the Madison Group assets. *Kennedy Declaration,* ¶ 32.

41.     Additionally, in May 2015, the Official Liquidators discovered that TMC had breached the terms of the Consulting Agreement by expending funds purportedly on behalf of an Opco under TMC's qualified authority for the wrongful purpose of supporting another (insider) Madison Group entity's operation at the ultimate expense of the Funds. The Official Liquidators notified TMC by letter dated June 3, 2015 that (i) this conduct constituted a breach of the Consulting Agreement, (ii) the breach was incurable as it amounted to a breach of TMC's duty to act in good faith, and (iii) that the Official Liquidators intended to terminate the Consulting Agreement at the conclusion of the 30 day period required under the Consulting Agreement, effective July 3, 2015. *Kennedy Declaration,* ¶ 33. TMC denied that a breach had been committed and demanded immediate payment of Consulting Fees it considered due under the Consulting Agreement. The Official Liquidators informed TMC that they would deal with any sums due to TMC under the Consulting Agreement in accordance with their statutorily enshrined duties as official liquidators. *Kennedy Declaration,* ¶ 33.

42.     On June 18, 2015, TMC filed a complaint for breach of contract against Messers. Kennedy and Wright individually, RHSW (Cayman) Limited (the Petitioners' employer) ("**RHSW**") in the United States District Court for the District of Delaware (Case No. 15-512-SLR, the "**District Court Litigation**") (a copy of which is attached to the Kennedy Declaration as Exhibit C). *Kennedy Declaration,* ¶ 34.

43.     Although the Consulting Agreement was entered into by the Official Liquidators as agents on behalf of the Funds as disclosed principals, TMC did not name the Funds in the District Court Litigation; instead, TMC named the Official Liquidators and RHSW, all non-parties to the

Consulting Agreement. *Kennedy Declaration*, ¶ 34. Accordingly, both the Official Liquidators and RHSW filed motions to dismiss, and on November 16, 2015, TMC filed a Notice of Dismissal with respect to the District Court Litigation, with prejudice (a copy of which is attached to the Kennedy Declaration as Exhibit D). *Kennedy Declaration*, ¶ 35.

44.    Also on November 16, 2015, TMC filed a new complaint for breach of contract arising out of the Consulting Agreement, naming Messers. Kennedy and Wright, the Funds, the Master Funds, and the Onshore Feeder Funds in the Superior Court for the State of Delaware (Case No. N15C-11-132 EMD CCLD, the "**Delaware Litigation**") (a copy of which is attached to the Kennedy Declaration as Exhibit E). Messers. Kennedy and Wright filed a motion to dismiss the Delaware Litigation on December 28, 2015. *Kennedy Declaration*, ¶ 36.

## V.    The Funds' Activities in the Cayman Islands

45.    The Funds were formed as exempted limited companies under the laws of the Cayman Islands and maintained their registered office in the Cayman Islands. *Gowrie Declaration*, ¶¶ 10, 12, 41.

46.    An "exempted" company under the Companies Law is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside the Cayman Islands.[9] Specifically, it may effect and conclude contracts in the Cayman Islands and exercise in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands, meaning that it may employ staff or agents in the Cayman Islands and have offices in the

---

[9] Requirements are such that the operation of the proposed company must be "... *conducted mainly outside the* [Cayman] *Islands.*" *See* sections 163 and 165 of the Companies Law. Exempted companies are also required to file an annual return with the Registrar to this effect, along with its annual fees, pursuant to section 168(b) of the Companies Law.

Cayman Islands in furtherance of its business outside the Cayman Islands, which the Funds have always had. *Gowrie Declaration*, ¶ 43.

47.    Although upon their incorporation the Funds were restricted from carrying on business within the Cayman Islands, this did not mean that the Funds had no presence there. For example, the Funds' registered offices prior to the commencement of the voluntary liquidation were located at c/o DMS House, 20 Genesis Close, P.O. Box 314, Grand Cayman, KY1-1104, Cayman Islands, where the Funds' annual filings with the Registrar were made. *Gowrie Declaration*, ¶ 43. So too, under the law of the Cayman Islands, situs of the shares of a Cayman Islands company is the place of its incorporation, *i.e.* the Cayman Islands. *Gowrie Declaration*, ¶ 43 (citing *160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256). In addition, the Funds were regulated by CIMA from its headquarters in the Cayman Islands. *Gowrie Declaration*, ¶ 43.

48.    The restriction on the carrying on of an "exempted" company's business inside the Cayman Islands also does not apply after a company commences liquidation in the Cayman Islands. Once the Funds were placed into voluntary liquidation, their registered offices were transferred to c/o The R&H Trust Co. Ltd., Windward 1, Regatta Office Park, P.O. Box 897, Grand Cayman KY1-1103, Cayman Islands, for the purpose of the liquidation. *Gowrie Declaration*, ¶ 12. In addition, it is a requirement of Cayman Islands law that at least one official liquidator be resident in the Cayman Islands. *Gowrie Declaration*, ¶ 44.

49.    In this case, both Official Liquidators are residents of the Cayman Islands, as required by the IPR. *Gowrie Declaration*, ¶ 44. Since their appointment, the Official Liquidators have overseen and directed all activities related to the Funds from the Cayman Islands. A significant proportion of the work to date relating to the Cayman Liquidations, including work carried out both pre and post the filing of the Supervision Petitions, has been conducted in the Cayman Islands, and all

of the work is supervised by the Official Liquidators and ultimately subject to the supervision of the

Grand Court. *Kennedy Declaration*, ¶¶ 45-46.

50.     Moreover, while the Funds were operating, they issued and received voluminous

documentation, and in all such documentation, each of the Funds is referred to and addressed as a

Cayman Islands company. Based upon the board meetings, statutory demands and resolutions to wind

up the Funds, shareholders meetings and the voluntary liquidation of the Funds themselves, all of

which focused on the Cayman Islands, it is clear that all relevant creditors, stakeholders, and

shareholders regard the Funds to be Cayman Islands companies. *Kennedy Declaration*, ¶ 44.

51.     Initially, the Official Liquidators caused the requisite notices and filings to be filed,

published, and served in the Cayman Islands, and arranged for the transfer of the Funds' books and

records to the new registered offices of the Funds in the Cayman Islands. *Kennedy Declaration*, ¶ 47.

52.     The Official Liquidators have also taken steps to protect and realize the Funds' assets.

For example, the Official Liquidators conducted the sale of the business and assets of JRV in

September 2015 and are currently working with a selling agent to market and sell Fort Lauderdale.

*Kennedy Declaration*, ¶ 48. The Official Liquidators have also taken control of the Funds' bank

accounts, the proceeds of which are held in the Cayman Islands. *Kennedy Declaration*, ¶ 49. All of

these actions were taken from the Cayman Islands.

53.     The Official Liquidators have also engaged in substantial formal and informal

communication with the Funds' former principals and all relevant stakeholders, including the

Liquidation Committees, toward arriving at a consensus for liquidation strategy and handling the day-

to-day operations of the Funds' operating assets. All such communications have been conducted from

the Cayman Islands. *Kennedy Declaration*, ¶ 50.

54.     As the Official Liquidators' investigations continue, the relationships of the Funds,

their operations, and potential claims against third parties are becoming clearer. Potential claims will

be overseen, managed and resolved (by litigation or negotiation) by the Official Liquidators from the

Cayman Islands, subject to oversight by the Grand Court. *Kennedy Declaration*, ¶ 51.

55.     As a result, not only is the management of the Funds being conducted by the Official

Liquidators from within the Cayman Islands, but the key aspects of the Funds' management are

subject to the supervision of the Grand Court. *Gowrie Declaration*, ¶ 46.

## RELIEF SOUGHT

56.     By this Verified Petition, the Official Liquidators seek the following relief:

a.     Recognition of the Cayman Liquidations as foreign main proceedings, or in the
alternative, foreign nonmain proceedings, pursuant to chapter 15 of the
Bankruptcy Code, and Petitioners as the Funds' foreign representatives under
sections 1509 and 1517 of the Bankruptcy Code; and

b.     Relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

## BASIS FOR RECOGNITION

57.     Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a

"foreign proceeding" if it appears that recognition will not undermine U.S. public policy and: "(1)

such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-

main proceeding within the meaning of section 1502; (2) the foreign representative applying for

recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11

U.S.C. § 1517(a).

58.     Each of those requirements is met here, and entry of an order substantially in the form

attached hereto as **Exhibit A** will significantly aid the Official Liquidators' efforts to administer the

Funds' assets and liabilities, and ensure a fair and equitable treatment of and greater distributions to the Funds' creditors and interest holders.

## I.    The Cayman Liquidations Are Foreign Proceedings and the Liquidators Are Foreign Representatives.

59.    Section    101(23)    of    the    Bankruptcy    Code    defines    a    foreign proceeding as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). This definition incorporates the term foreign representative, which the Bankruptcy Code in turn defines as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Official Liquidators and the Cayman Liquidations undoubtedly satisfy each of these requirements.

60.    First, the Cayman Liquidations are judicial proceedings in a foreign country, the Cayman Islands, subject to the control and supervision of the Grand Court. *Gowrie Declaration*, ¶ 39. All claims against the Funds may be submitted in the Cayman Liquidations and all claimants have the right to access the Grand Court and appeal decisions of the Official Liquidators. *Kennedy Declaration*, ¶ 45.

61.    Second, the Cayman Liquidations are being conducted by the Official Liquidators, who were appointed by the Grand Court pursuant to the Companies Law as joint official liquidators to oversee the winding up of the Funds according to the provisions of the Companies Law. *Gowrie*

*Declaration*, ¶ 21. As such, the Official Liquidators each are a "person authorized in a foreign proceeding to administer the reorganization or the liquidation of [the Funds'] assets or affairs," within the meaning of section 101(24).

62.    Third, the relevant portions of the Companies Law and related rules that govern the Cayman Liquidations specifically relate to proceedings in the Cayman Islands concerning "insolvency or adjustment of debt." 11 U.S.C. § 101(23); *Gowrie Declaration*, ¶ 26.

63.    Finally, the Cayman Liquidations are "collective ... proceeding[s]" because they "consider[] the rights and obligations of all creditors." *See, e.g., In re Ashapura Minechem Ltd.*, No. 11-14668 (JMP) (Bankr. S.D.N.Y. Nov. 22, 2011) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 370 (Bankr. E.D.N.Y. 2009) (citations omitted). Pursuant to the Supervision Orders and the Companies Law, the Cayman Liquidations and the Official Liquidators' management of the Funds' assets and affairs are subject to the supervision and control of the Grand Court. *Gowrie Declaration*, ¶ 39. Among other tasks, the Official Liquidators currently are in the process of collecting and assessing claims from all of the Funds' creditors and against current and contingent debtors in respect of the Funds, have met with the Funds' stakeholders, are well engaged in the process of liquidating the Funds' assets those assets' underlying hard assets, and formed the Liquidation Committees to work with them on the Cayman Liquidations.

64.    As discussed above, numerous courts in this and other districts have found that official liquidation proceedings brought pursuant to the Companies Law qualify as a "foreign proceeding," and that joint official liquidators appointed and overseen by the Grand Court qualify as a "foreign representative" for purposes of section 101(23) and (24). *See, e.g., In re LDK Solar Co., Ltd.*, No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014) (recognizing Cayman Islands liquidation as foreign

main proceeding); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) (same); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (commencement of Cayman proceedings, together with subsequent activities of liquidators had the effect of transferring holding company's COMI to Cayman); *In re Millard*, 501 B.R. 644, 647 (Bankr. S.D.N.Y. 2013) (individual bankruptcies before Cayman Grand Court); *In re AJW Offshore Ltd.*, Case No. 13-70078, (Bankr. E.D.N.Y. Feb. 5, 2013); *In re Bancredit Cayman Ltd. (in Liquidation)*, No. 06-11026 (SMB) (Bankr. S.D.N.Y. Nov. 2, 2007).

65.     For the foregoing reasons, the Cayman Liquidations are "foreign proceedings" within the meaning of section 1517(a)(1) of the Bankruptcy Code.

**II.    The Cayman Liquidations are Foreign Main Proceedings.**

66.     The Cayman Liquidations are "foreign main proceedings" within the meaning of section 1502(4) of the Bankruptcy Code because the Funds' COMI is in the Cayman Islands. *Kennedy Declaration*, ¶¶ 41-53. The Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign proceeding "shall be recognized" as a foreign main proceeding if it is pending where the debtor has its COMI. *See* 11 U.S.C. § 1517(b)(1).

67.     Although the Bankruptcy Code does not define "center of main interests," pursuant to section 1516(c) of the Bankruptcy Code, in the absence of evidence to the contrary, the debtor's registered office, here the Cayman Islands, is presumed to be its COMI. 11 U.S.C. §1516(c). *See also In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010) (holding that debtor's registered jurisdiction was its COMI where debtor established the section 1516 presumption, and no evidence was presented rebutting that presumption).

68.     Here, both of the Funds' registered offices are in the Cayman Islands, and have been since the time of the Funds' incorporation. *Kennedy Declaration*, ¶ 12. Further, there is no contrary evidence to rebut the resulting presumption that the Cayman Islands is the Funds' COMI.

69.     As discussed in detail above, although the Funds were formed as "exempt" companies, they nevertheless maintained their registered offices in the Cayman Islands even before the commencement of the Cayman Liquidations, and their documents and other correspondence made it clear that each of the Funds was a Cayman Islands company. *Kennedy Declaration*, ¶¶ 42-44.

70.     In any case, a foreign debtor's COMI is determined at the time the chapter 15 petition is filed. *In re Fairfield Sentry Ltd.,* 714 F.3d 127, 137 (2d Cir. 2013) ("a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests."); *In re Millennium Global Emerging Credit Master Fund Limited,* 458 B.R. 63 (Bankr. S.D.N.Y. 2011) (describing same COMI test in respect of similar Bermuda fund structure). Where, as here, a debtor has engaged in substantial restructuring efforts and related activities prior to the filing of the chapter 15 petition, courts will consider such activities in the determination of the debtor's COMI. *Fairfield Sentry Ltd.*, 714 F.3d at 137.

71.     On this basis, numerous similar offshore funds and structures have been recognized by courts in various jurisdictions as foreign main proceedings pursuant to chapter 15. *See, e.g., In re Tranen Capital Alternative Investment Fund Ltd.,* No. 15-12620 (Bankr. S.D.N.Y. Oct. 29, 2015) (recognizing liquidation of similar British Virgin Island Fund structure as a foreign main proceeding); *In re Lawndale Group S.A.,* No. 15-11352 (SCC) (Bankr. S.D.N.Y. July 6, 2015) (recognizing liquidation of British Virgin Islands entity as foreign main proceeding); *In re Pioneer Freight Futures*, No. 13-12324 (Bankr. S.D.N.Y. Aug. 23, 2013) (recognizing British Virgin Islands liquidation proceeding as foreign main proceeding); *In re Farenco Shipping Co. Ltd.,* No. 11-14138

(REG) (Bankr. S.D.N.Y Feb. 24, 2012) (same); *see also In re British American Isle of Venice (BVI), Ltd.*, 441 B.R. 713 (Bankr. S.D. Fla. 2010) (recognition of offshore funds as foreign main proceedings); *In re Grand Prix Assocs., Inc.,* No. 09-16545 (DHS), (Bankr. D.N.J. May 18, 2009) (same); *In re Saad Invs. Fin. Co. (No. 5) Ltd.,* No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) (Cayman fund).

72.    In addition to the presumption provided under section 1516, courts consider any relevant factors, including: (i) the location of the debtor's assets; (ii) the location of the debtor's books and records; (iii) the location of the majority of the debtor's creditors; (iv) the commercial expectations and knowledge of the debtor's creditors; and (v) the location of those who actually manage the debtor. *See, e.g., In re Suntech Power Holdings Co., Ltd.,* 520 B.R. at 416; *In re Grand Prix Assocs.*, No. 09-16545, 2009 WL 1410519, at *22 (Bankr. D.N.J. May 18, 2009). These factors, however, are not dispositive or exclusive, and none of the factors are required. *See In re Fairfield Sentry Ltd.*, 714 F.3d at 137-38. Further, courts have also looked to whether a chapter 15 debtor's COMI would have been readily ascertainable to parties in interest, such as the debtor's creditors. *See Grand Prix Assocs.*, 2009 WL 1410519, at *6.

73.    Applying the foregoing factors to this case, there is no doubt that the Funds' COMI is the Cayman Islands. Substantial assets of the Funds - including almost all of the Funds' known liquid assets (i.e., the Funds' bank account balances) - are located in the Cayman Islands, as are the Funds' books and records. *Kennedy Declaration*, ¶ 43, 47. The Official Liquidators are investigating the Funds' intangible rights in the form of potential claims, which will be controlled and coordinated by the Official Liquidators from the Cayman Islands. *Kennedy Declaration*, ¶ 51. The Official Liquidators also have communicated with the Liquidation Committees from the Cayman Islands. *Kennedy Declaration*, ¶ 61. Based on the documentation issued both by and to the Funds, the board

meetings, statutory demands and resolutions to wind up the Funds, shareholder meetings and the Funds' voluntary liquidations, all of which focused on the Cayman Islands, it is clear that all relevant creditors, stakeholders, and shareholders regard the Funds to be Cayman Islands companies. *Kennedy Declaration*, ¶ 44.

74.    Since the commencement of the Cayman Liquidations, substantially all activities associated therewith have been conducted and/or overseen by the Official Liquidators from the Cayman Islands, including the substantial liquidation and wind-down of the Funds' assets and activities. Among other things, the Official Liquidators filed all necessary notices and displaced the existing boards of directors of the Funds and assumed their duties, are engaged in the process of investigating and assessing the claims of the Funds and their creditors and interest holders, and of gathering information about the operation and management of the Funds' businesses before the Cayman Liquidations, and are engaged in discussions with creditors and interest holders. *Kennedy Declaration*, ¶¶ 42-53.

75.    Under the circumstances, the Official Liquidators submit that there is ample evidence and precedent to support recognition of the Cayman Liquidations as foreign main proceedings.

III.    **Alternatively, the Cayman Liquidations Should Be Recognized as Foreign Non-Main Proceedings.**

76.    As set forth above, the Cayman Liquidations meet the requirements of a "foreign main proceeding" pursuant to section 1502 of the Bankruptcy Code. Nevertheless, should the Court determine that the Cayman Liquidations should not be recognized as foreign main proceedings, the Official Liquidators submit that, in the alternative, the Cayman Liquidations should be recognized as foreign nonmain proceedings under sections 1517(b)(2) and 1502(5) of the Bankruptcy Code.

77.    Section 1502(5) of the Bankruptcy Code defines a foreign nonmain proceeding as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). In turn, "establishment" is defined by section 1502(2) as being "any place of operations where the debtor carries out nontransitory economic activity." 11 U.S.C. § 1502(2). The "establishment" requirement is satisfied by the local conduct of business. *See In re Fairfield Sentry Ltd.*, No. 10-13164, 2011 WL 4357421 at *10 n.8 (S.D.N.Y. Sept. 16, 2011) ("This Court agrees with the Bankruptcy Court that if main recognition were not granted, non-main recognition of Sentry's BVI Proceeding would be appropriate because Sentry has an establishment in the BVI for the conduct of nontransitory economic activity, i.e. a local place of business.").

78.    The Official Liquidators respectfully submit that at a minimum, their activities in the Cayman Islands constitute nontransitory economic activity. *Kennedy Declaration*, ¶ 41. The Official Liquidators are continuing the remaining business of the Funds as part of the winding-up of the Funds' affairs from the Official Liquidators' offices in the Cayman Islands. *Kennedy Declaration*, ¶ 45. There is no foreign or domestic insolvency proceeding other than the Cayman Liquidation. *Kennedy Declaration*, ¶ 54.

79.    As such, there can be no dispute that the Cayman Liquidations are legitimate insolvency proceedings. Under the circumstances, and given that the Funds' ongoing business activities are being conducted from the Cayman Islands, at a minimum this Court should recognize the Cayman Liquidations as foreign nonmain proceedings pursuant to chapter 15 and further, to grant the Official Liquidators the discretionary relief requested.

**IV.    The Cayman Liquidations Meet All Other Requirements for Recognition.**

80.    In addition to being foreign main (or nonmain) proceedings brought by duly appointed foreign representatives, the Cayman Liquidations meet all other requirements for recognition under

section 1515 of the Bankruptcy Code. The Petition is accompanied by certified copies of the Supervision Orders issued by the Grand Court, which evidence the commencement of the Cayman Liquidations and the appointment of the Official Liquidators as joint official liquidators of the Funds. The Petition also is accompanied by a declaration that contains a statement identifying all foreign proceedings with respect to the Funds that are known to the Official Liquidators. *See* 11 U.S.C. §§ 1515(b), (c); *see also Kennedy Declaration*, ¶ 54.

81.    The Petition likewise is accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating that there are no other persons or entities known to the Official Liquidators that are authorized to administer foreign proceedings with respect to the Funds, and a list of all parties to litigation with the Funds in the United States. *See Kennedy Declaration*, ¶ 55, Exhibit G. All documents supporting the Petition are in English. *See* 11 U.S.C. § 1515(d).

82.    For all of these reasons, this Court can and should find that all of the requirements for recognition of the Cayman Liquidations as foreign main proceedings under chapter 15 have been satisfied.

## CONCLUSION

83. WHEREFORE, the Official Liquidators respectfully request that this Court enter an Order, substantially in the form of **Exhibit A** to this Petition, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: January *11*, 2016
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Ian J. Bambrick (No. 5455)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-5038
Facsimile:  (302) 571-1253

-and-

HOLLAND & KNIGHT LLP
Warren E. Gluck, Esq. (*pro hac vice* pending)
Barbra R. Parlin, Esq. (*pro hac vice* pending)
Kathleen M. St. John (*pro hac vice* pending)
31 West 52nd Street
New York, New York 10019
Telephone:  (212) 513-3200
Facsimile:  (212) 385-9010

*Counsel for the Official Liquidators of the Funds*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Christopher Barnett Kennedy declares as follows:

My colleague Matthew James Wright and I are the duly appointed joint official liquidators (the "**Official Liquidators**") of Madison Niche Opportunities Fund, Ltd. (in Official Liquidation) and Madison Niche Assets Fund, Ltd. (in Official Liquidation), both of which are liquidation under the supervision of the Financial Services Division of the Grand Court of the Cayman Islands (the "**Grand Court**") (cause nos. FSD 0035 of 2015 (ASQC) (re the Assets Fund) and 0036 of 2015 (ASQC) (re the Opportunities Fund)) as a result of the Grand Court's orders made pursuant to the Official Liquidators' petitions for the Grand Court's supervision under section 131 of the Companies Law of the Cayman Islands (2013 Revision). I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Insolvency Proceedings and Application for Additional Relief, Pursuant to Sections 1504, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code* (the "**Verified Petition**"). I have read the Verified Petition, am informed, and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8ᵗʰ day of January, 2016, in Cayman Islands.

Christopher Barnett Kennedy
Official Liquidator
Madison Niche Opportunities
Fund, Ltd. (in Official
Liquidation) and Madison Niche
Assets Fund, Ltd. (in Official
Liquidation)