## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-----------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 15 |
|  | : |  |
| MADISON NICHE ASSETS | : | Case No. 16-_10043_ (___) |
| FUND, LTD. (IN OFFICIAL | : |  |
| LIQUIDATION),[1] *et al.*, | : | (Joint Administration Requested) |
|  | : |  |
| Debtors in | : |  |
| Foreign Proceedings. | : |  |
|  | : |  |
|  | : |  |

-----------------------------------------------------------x

### DECLARATION OF BARNABY GOWRIE IN SUPPORT OF CHAPTER 15 PETITIONS OF DEBTORS IN FOREIGN PROCEEDINGS FOR RECOGNITION AS FOREIGN MAIN PROCEEDINGS

I, **BARNABY GOWRIE** hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

**Introduction**

1.    I am an Attorney-at-Law in the Cayman Islands with the firm of Walkers, 190 Elgin Avenue, George Town, Grand Cayman, Cayman Islands, KY1-9001, where I am a Partner in the Commercial Litigation & Dispute Resolution and the Insolvency & Corporate Recovery Groups.

2.    I am a graduate of Magdalene College, Cambridge University, England where I studied Law. I was admitted to the Law Society of England and Wales in 2004 and practiced as a solicitor in England prior to being admitted as Attorney-at-Law in the Cayman Islands in 2007.  I became a partner of Walkers in 2014.  Walkers was established in 1964 and is a major offshore

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses:  Madison Niche Assets Fund, Ltd. (in Official Liquidation) (1425) and Madison Niche Opportunities Fund, Ltd. (in Official Liquidation) (0084).  The Funds' registered office is 2nd Floor, Windward 1, Regatta Office Park, P.O. Box 897, Grand Cayman, KY1-1103.

law firm with offices in the Cayman Islands, the British Virgin Islands, London, Jersey, Dubai, Hong Kong, Singapore, Bermuda and Dublin.

3.      The focus of my practice is contentious and non-contentious cross-border restructuring and insolvency. As a result of my experience I am familiar with the statutory framework and common law principles applicable to the winding up of companies registered in the Cayman Islands.

4.      I act as Cayman Islands legal counsel to Matthew Wright and Christopher Kennedy who, on 11 March 2015, were appointed by the Financial Services Division of the Grand Court of the Cayman Islands (the "**Grand Court**") as the Joint Official Liquidators of Madison Niche Opportunities Fund, Ltd. (in Official Liquidation) ("**Opportunities Fund**") and Madison Niche Assets Fund, Ltd. (in Official Liquidation) ("**Assets Fund**", and together with Opportunities Fund, the "**Funds**") (the "**Official Liquidators**" / the "**Petitioners**").

5.      Although I am not a U.S. Attorney and therefore do not purport to make any authoritative statements concerning matters of U.S. law, I am reasonably well acquainted with Chapter 15 of the United States Bankruptcy Code ("**Chapter 15**") due to my experience advising clients on complex cross-border corporate restructurings and insolvencies.

6.      I make this declaration in support of the petitions dated 11 January 2016 seeking the U.S. Bankruptcy Court's recognition of (i) the official liquidation of the Funds as "foreign main proceedings" pursuant to 11 U.S.C. § 1517(b)(1) and (ii) of the Petitioners as "foreign representatives" of the Funds pursuant to 11 U.S.C. § 101(24) (the "**Chapter 15 Petitions**").

7.      Except as otherwise indicated, all facts set forth in this declaration are based upon my personal experience and knowledge and my review of relevant documents, which include the sworn declarations of Christopher Barnett Kennedy dated 8 January 2016 (the "**Kennedy**

2

Declaration") and Warren Gluck dated 8 January 2016 (the "**Gluck Declaration**"). To the extent matters that statements in this declaration are of my legal opinion, they represent my views of the laws of the Cayman Islands only.

8.      For the reasons set out herein, I consider that: (a) the Official Liquidators qualify as "foreign representatives" of the Funds in accordance with my understanding of 11 U.S.C. § 101(24); (b) the liquidations of the Funds constitute "foreign proceedings" in accordance with my understanding 11 U.S.C. § 101(23); and (c) the liquidations of the Funds constitute "foreign main proceedings" within my understanding of the meaning of Sections 1502(4) and 1517(b)(1) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

9.      I have been asked by the Petitioners to explain the relevant substantive Cayman Islands law and procedural rules considered to be relevant to the liquidation and dissolution of Cayman Islands companies and, more particularly, the Funds.

<u>**Background**</u>

10.      Both Funds were incorporated as exempted limited companies under the laws of the Cayman Islands: the Opportunities Fund was incorporated on 23 September 2002, and the Assets Fund on 8 November 2004.

11.      Both Funds were formerly registered as mutual funds and regulated by the Cayman Islands Monetary Authority ("**CIMA**"). Following their simultaneous entry into voluntary liquidation (described below), both Funds' CIMA licences were terminated.

12.      Prior to their entry into voluntary liquidation, both Funds' registered addresses were c/o DMS House, 20 Genesis Close, P.O. Box 314, Grand Cayman, KY1-1104. Following their entry into voluntary liquidation, their registered addresses were changed to c/o The R&H

#38258440_v1

Trust Co. Ltd., Windward 1, Regatta Office Park, PO Box 897, Grand Cayman KY1-1103, Cayman Islands.

13.     The Funds serve as feeder funds for: in the case of the Opportunities Fund, Madison Niche Opportunities Master Fund, Ltd. (in Voluntary Liquidation) ("**MNOMF**"); and in the case of the Assets Fund, Madison Niche Assets Master Fund, Ltd. (in Voluntary Liquidation) ("**MNAMF**" and together with MNOMF, the "**Master Funds**"). The Petitioners also are appointed as the joint voluntary liquidators of the Master Funds.

14.     In addition to the Funds, two further funds act as feeder funds into the Master Funds. They both are registered in Delaware and are known as: Madison Niche Opportunities Fund, LLC (in Voluntary Liquidation), which feeds into MNOMF ("**MNOF LLC**"); and Madison Niche Assets Fund, LLC (in Voluntary Liquidation), which feeds into MNAMF ("**MNAF LLC**", and together with MNOF LLC, the "**Onshore Feeder Funds**"). The Petitioners likewise are appointed as the joint voluntary liquidators of the Onshore Feeder Funds.

15.     In summary, the Petitioners are presently appointed as the joint official liquidators of the Funds and as the joint voluntary liquidators of the Master Funds and Onshore Feeder Funds. The Petitioners do not currently consider it necessary to petition for Chapter 15 recognition of the Master Funds or the Onshore Feeder Funds so in the interests of succinctness I focus solely on the Funds for the balance of this declaration.

**Entry by the Funds into voluntary liquidation**

16.     On 26 June 2014 the directors of both of the Funds resolved to recommend to the sole voting shareholders of both Funds (together, the "**Shareholders**") that the Funds should enter into voluntary liquidation and that the Petitioners should be appointed as the joint voluntary liquidators of the Funds.

#38258440_v1

17.     On 1 July 2014 the Shareholders passed resolutions as special written resolutions, in each case providing that the business and affairs of the Funds be voluntarily wound up in accordance with section 116(c) of the Companies Law of the Cayman Islands (2013 Revision) (the "**Companies Law**") and that the Petitioners be appointed as the joint voluntary liquidators of the Funds.

18.     As required by the Companies Law, the Petitioners (acting then in their capacities as the joint voluntary liquidators of the Funds) filed consents to act as the voluntary liquidators of the Funds;[2] directors' solvency declarations;[3] and notices of winding up with the Cayman Islands Registrar of Companies[4] (the "**Registrar**") on 1 July 2014. They also placed notice of their appointments in the Cayman Islands Gazette,[5] which appeared on 14 July 2014.

19.     For completeness, I should note that comparable procedures were followed in relation to the Master Funds and the Onshore Feeder Funds, the corollary of which was that the Petitioners were duly appointed as the joint voluntary liquidators of the Funds, the Master Funds and the Onshore Feeder Funds as of 1 July 2014.

**Entry by the Funds into Official Liquidation**

20.     On 6 March 2015, the Petitioners, acting then in their capacities as the joint voluntary liquidators of the Funds, issued petitions to the Grand Court under section 131 of the Companies Law seeking, among other orders, orders that: the voluntary liquidation of the Funds continue under the supervision of the Grand Court; the Petitioners be appointed as the Official Liquidators of the Funds; and the Petitioners be granted certain powers in their capacities as the

---

[2] Section 123 (1)(b) of the Companies Law.
[3] Section 123 (1)(c) of the Companies Law.
[4] Section 123 (1)(a) of the Companies Law.
[5] Section 123 (1)(e) of the Companies Law.

#38258440_v1

Official Liquidators of the Funds (the "**Supervision Petitions**").  True and correct copies of the Supervision Petitions are attached to the Kennedy Declaration as **Exhibit A**.

21.     On 11 March 2015, the Grand Court made orders in the terms sought by the Supervision Petitions (the "**Supervision Orders**").  True and correct copies of the Supervision Orders are attached to the Kennedy Declaration as **Exhibit B**.

22.     As a consequence of this, the Official Liquidators have, since 11 March 2015, been statutorily empowered to exercise the powers set out in section 110 of the Companies Law and in the Supervision Orders, in relation to the Funds.  True and correct copies of the relevant sections of the Companies Law are attached hereto as **Exhibit A**.

## Sources of Law of the Cayman Islands

23.     The Cayman Islands is a British Overseas Territory and as such, its laws are derived from: (a) original local statutes enacted by the local general legislative assembly; (b) English common law brought to the Cayman Islands by early settlers, as adapted to local circumstances and subsequently developed and applied by the courts of the Cayman Islands; (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the Cayman Islands; and (e) statutes of the United Kingdom Parliament that have been expressly extended to apply to the Cayman Islands.

24.     Where no specific local statutory provision applies, the courts of the Cayman Islands will apply English common law as adapted to the circumstances of the Cayman Islands.  On questions governed by the common law, the doctrine of judicial precedent applies.  The court of first instance is the Grand Court which will, as a matter of judicial

6

comity, follow its own previous decisions unless they are shown to be wrong.[6] There is a right of appeal from the Grand Court to the Cayman Islands Court of Appeal. The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council (the "**Privy Council**") which sits in London and which is comprised of members of the English Supreme Court (the highest court in England and formerly known as the Judicial Committee of the House of Lords (the "**House of Lords**")) and senior judges from other Commonwealth countries. The Grand Court is bound by decisions of the Cayman Islands Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

25.    There is an increasing body of jurisprudence in the Cayman Islands developed mainly over the last 40 years and reported in the Cayman Islands Law Reports. Notwithstanding that, it still regularly transpires that there is no local Cayman Islands authority on a particular issue. Where there is no Cayman Islands authority on a particular issue, the Cayman Islands courts will look to and apply decisions of the English courts and, less frequently, decisions of the courts of other Commonwealth jurisdictions. Decisions of the English Court of Appeal and Supreme Court are regarded as highly persuasive. So too are decisions of the Privy Council on appeals originating from other Overseas Territories and Commonwealth jurisdictions and decisions of the highest courts of the other developed Commonwealth jurisdictions such as Australia, New Zealand, Canada, and Hong Kong.

**Liquidation of Cayman Islands Companies**

26.    The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Law, which is supplemented by the

---

[6] Re Bank of Credit & Commerce International, CILR 56 [1994-95].

Companies Winding Up Rules 2008 (as revised) ("**CWR**"), the Insolvency Practitioners Regulations 2008 (as revised) (the "**IPR**") and the Grand Court Rules 1995 (as revised) (the "**GCR**"). The provisions of Part V of the Companies Law apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies.

27.    A Cayman Islands company may be wound up: (a) voluntarily, following the passing of a special resolution of its shareholder(s)[7] or pursuant to a mandatory term in its constitutional documents[8]; (b) compulsorily, by order of the Grand Court;[9] or (c) under the supervision of the Grand Court.[10]  It is the third of these categories that applies to the Funds, so I will discuss only it in further detail.

**Court-Supervised Liquidation**

28.    The liquidation of a Cayman Islands company may be brought under the supervision of the Grand Court, pursuant to two statutory mechanisms set out in the Companies Law and described below.

29.    The first occurs where a company is being wound up voluntarily: following the entry of the company into voluntary liquidation, the voluntary liquidator is required to file declarations of solvency with the Cayman Islands Registry of Companies. The declarations of solvency are sworn by all incumbent directors of the company and they attest to the fact that the company will remain solvent for a period of twelve months following its entry into voluntary liquidation. If the voluntary liquidator is unable to procure the filing of these sworn declarations within 28 days of the commencement of the voluntary liquidation process the voluntary

---

[7] Section 90(b)(i) of the Companies Law.
[8] Section 90(b)(ii) of the Companies Law.
[9] Section 90(a) of the Companies Law.
[10] Section 90(c) of the Companies Law.

liquidator is obliged to apply to the Grand Court for an order that the liquidation of the company continue under the Grand Court's supervision. [11]

30.     The second occurs when the voluntary liquidator of a company petitions the Grand Court for an order that the winding up of the company continue under the Grand Court's supervision. Such a petition is usually made on the grounds that the company is or is likely to become insolvent or if the voluntary liquidator believes that the Grand Court's supervision will facilitate a more effective, economic or expeditious liquidation of the company, in the interests of shareholders and creditors.[12]   In the case of the Funds, they both entered into Court-Supervised liquidation pursuant to this mechanism following issuing of the Supervision Petitions by the Petitioners (acting then in their capacities as joint voluntary liquidators of the Funds).

31.     A key principle underlying the Companies Law is that the claims of investors and creditors within the same class are treated on a *pari passu* basis.[13]

32.     Section 97(1) of the Companies Law provides that upon the entry of a winding up order, no suit or other proceeding may be commenced or continued against the company except with leave of the Grand Court and subject to such terms as the Grand Court may impose. This automatic stay serves to promote the Official Liquidators' ability to deal with the claims and creditors collectively and comprehensively.

33.     In my experience, Cayman Islands liquidation proceedings are fair and equitable. All creditors and interest holders may have an opportunity to be heard by the Cayman Court and no creditor will be prejudiced because it is foreign-based.

**The Official Liquidators**

---

[11] Section 124(1) of the Companies Law.
[12] Section 131 of the Companies Law.
[13] Section 140 of the Companies Law.

#38258440_v1

34.    The Official Liquidators are fiduciaries and officers of the Grand Court: their duties are to (a) collect, realise and distribute the assets of the Funds to its creditors and if there is a surplus, to contributories, and (b) to report to the Funds' creditors and contributories upon the affairs of the Funds and the manner in which they are being wound up.[14]

35.    Unless otherwise ordered by the Grand Court, Schedule 3, Part I to the Companies Law sets out the powers that the Official Liquidators may exercise with the sanction of the Grand Court.  They are:

a.    *"Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.*

b.    *Power to carry on the business of the company so far as may be necessary for its beneficial winding up.*

c.    *Power to dispose of any property of the company to a person who is or was related to the company.*

d.    *Power to pay any class of creditors in full.*

e.    *Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.*

f.    *Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.*

g.    *Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.*

h.    *The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.*

---

[14] Section 110 of the Companies Law.

#38258440_v1

> i. *The power to raise or borrow money and grant securities therefor over the property of the company, the power to engage staff (whether or not as employees of the company) to assist him in the performance of his functions.*
>
> j. *The power to engage attorneys and other professionally qualified persons to assist him in the performance of his functions."*

36.    Schedule 3, Part II of the Companies Law further provides that the Official Liquidators are permitted to exercise the following powers without the Grand Court's sanction:

> a. *"The power to take possession of, collect and get in the property of the company and for that purpose to take all such proceedings as he considers necessary.*
>
> b. *The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.*
>
> c. *The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.*
>
> d. *The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.*
>
> e. *The power to promote a scheme of arrangement pursuant to section 86.*
>
> f. *The power to convene meetings of creditors and contributories.*
>
> g. *The power to do all other things incidental to the exercise of his powers."*

37.    The Official Liquidators are also empowered to investigate (i) the causes for the failure of the Funds' business, as well as (ii) generally, the promotion, business, dealings and affairs of the Funds.[15]

**US Bankruptcy Code**

---

[15] Section 102 of the Companies Law.

#38258440_v1

<u>The Official Liquidations of the Funds are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code</u>

38.    I am advised by U.S. Counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code as:

> "... *a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganisation or liquidation.*"

11 U.S.C. § 101(23).

39.    In my view the Court-supervised liquidation of the Funds satisfies the above definition: the liquidation of the Funds commenced as voluntary liquidations pursuant to Part V of the Companies Law, then pursuant to Supervision Orders entered into a Grand Court-supervised liquidation process.

<u>The Petitioners are "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code</u>

40.    I am also advised by U.S. Counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code as:

> "... *a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.*"

11 U.S.C. § 101(24).

41.    In my view the Petitioners satisfy this definition: as fiduciaries and officers of the Grand Court, the Official Liquidators are duly authorised and empowered by the Grand Court to administer the liquidation of the Funds and to act as duly authorised representatives of the Funds.

<u>Centre of Main Interests of the Funds</u>

#38258440_v1

42.     I am further advised by U.S. Counsel that certain other provisions of Cayman Islands law are relevant to the determination of the Funds' centre of main interests ("**COMI**") under section 1517 of the U.S. Bankruptcy Code.

43.     The Funds were established as Cayman Islands exempted limited companies.  An exempted company is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside the Cayman Islands.  Specifically it may effect and conclude contracts in the Cayman Islands and exercise in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands, meaning that it can employ staff or agents in the Cayman Islands and have offices in the Cayman Islands, which the Funds have always had.  Although upon their incorporation the Funds were restricted from carrying on business within the Cayman Islands, this did not mean that the Funds had no presence at all in this jurisdiction. For example, the Funds' registered office prior to the commencement of the voluntary liquidation was located at c/o DMS House, 20 Genesis Close, P.O. Box 314, Grand Cayman, KY1-1104, where the Funds' annual filings with the Registrar were made.  Under Cayman Islands law, situs of the shares of a Cayman Islands company is the place of its incorporation, *i.e.* the Cayman Islands. See *160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256.  In addition, the Funds were regulated by the Cayman Islands Monetary Authority from the Cayman Islands.

44.     It is also a requirement of the IPR that at least one official liquidator be resident in the Cayman Islands. In the present case, both of the Petitioners are resident in the Cayman Islands.

13

45.     Under the Supervision Orders, the Petitioners were granted extensive powers, but it remains the case that where they are contemplating actions that are not expressly provided for in the Supervision Orders, they are required to seek the Grand Court's sanction.

46.     In practice, this means that not only is the management of the Funds being conducted by the Petitioners from within the Cayman Islands, but that key aspects of the management of the Funds are subject to the supervision of the Grand Court.    Accordingly, there is a substantial nexus to the Cayman Islands in respect of the operating control over the Funds.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 8th day of January, 2016.

<br>

_____
BARNABY GOWRIE

#38258440_v1

**EXHIBIT A**

#38258440_v1

# CAYMAN ISLANDS



Supplement No. 6 published with Extraordinary Gazette No. 82 of 11th October, 2013.

## COMPANIES LAW

### (2013 REVISION)

Cap. 22 (Law 3 of 1961) of the 1963 Revised Edition of the Laws consolidated with Laws 12 of 1962, 9 of 1966, 1 of 1971, 7 of 1973, 24 of 1974, 25 of 1975, 19 of 1977, 16 of 1978, 8 of 1980, 21 of 1981, 34 of 1983, 2 of 1984, 22 of 1984, 15 of 1985, 38 of 1985, 24 of 1987, 14 of 1988, 14 of 1989, 10 of 1990, 3 of 1991, 23 of 1991 (part), 11 of 1992, 3 of 1993, 23 of 1993, 33 of 1993, 2 of 1994, 8 of 1994, 14 of 1996, 26 of 1997, 4 of 1998, 6 of 1998, 20 of 1998 (part), 5 of 1999, 7 of 2000 (part), 5 of 2001, 10 of 2001, 29 of 2001, 46 of 2001, 22 of 2002, 26 of 2002, 28 of 2003, 13 of 2006, 15 of 2007, 12 of 2009, 33 of 2009, 37 of 2010, 16 of 2011, 29 of 2011, 6 of 2012, 14 of 2012, 29 of 2012, 1 of 2013, 6 of 2013 and the Companies (Amendment of Schedule) Order, 2011.

*Companies Law (2013 Revision)*

Revised under the authority of the Law Revision Law (1999 Revision).

Originally enacted-

| | |
|---|---|
| Cap. 22-1st January, 1964 | Law 14 of 1996-5th September, 1996 |
| Law 9 of 1966-14th March, 1966 | Law 26 of 1997-15th December, 1997 |
| Law 1 of 1971-8th January, 1971 | Law 4 of 1998-4th March, 1998 |
| Law 7 of 1973-28th June, 1973 | Law 6 of 1998-9th March, 1998 |
| Law 24 of 1974-22nd November, 1974 | Law 20 of 1998-15th February, 1999 |
| Law 25 of 1975-9th December, 1975 | Law 5 of 1999-14th April, 1999 |
| Law 19 of 1977-10th November, 1977 | Law 7 of 2000- 20th July, 2000. |
| Law 16 of 1978-8th September, 1978 | Law 5 of 2001-20th April, 2001 |
| Law 6 of 1980-17th March, 1980 | Law 10 of 2001-25th May, 2001 |
| Law 21 of 1981-13th October, 1981 | Law 29 of 2001-26th September, 2001 |
| Law 34 of 1983-24th November, 1983 | Law 46 of 2001-14th January, 2002 |
| Law 2 of 1984-28th February, 1984 | Law 22 of 2002-5th December, 2002 |
| Law 22 of 1984-7th September, 1984 | Law 26 of 2002-5th December, 2002 |
| Law 15 of 1985-24th May, 1985 | Law 28 of 2003-3rd December, 2003 |
| Law 38 of 1985-19th December, 1985 | Law 13 of 2006-1st June, 2006 |
| Law 24 of 1987-17th November, 1987 | Law 15 of 2007-17th September, 2007 |
| Law 14 of 1988-9th September, 1988 | Law 12 of 2009-20th March, 2009 |
| Law 14 of 1989-5th September, 1989 | Law 33 of 2009-2nd December, 2009 |
| Law 10 of 1990-18th July, 1990 | Law 37 of 2010-15th September, 2010 |
| Law 3 of 1991-21st February, 1991 | Law 16 of 2011-11th April, 2011 |
| Law 23 of 1991-12th December, 1991 | Law 29 of 2011-18th November, 2011 |
| Law 11 of 1992-13th July, 1992 | Order of 2011-10th January, 2012 |
| Law 3 of 1993-26th March, 1993 | Law 6 of 2012-29th August, 2012 |
| Law 23 of 1993-29th September, 1993 | Law 14 of 2012-31st August, 2012 |
| Law 33 of 1993-29th November, 1993 | Law 29 of 2012-19th November, 2012 |
| Law 2 of 1994-9th March, 1994 | Law 1 of 2013-10th January, 2013 |
| Law 8 of 1994-23rd September, 1994 | Law 6 of 2013-15th March, 2013. |

Consolidated and revised this 31st day of July, 2013.

*Note (not forming part of the Law): This revision replaces the 2012 Revision which should now be discarded.*

2

"foreign practitioner" means a person who is qualified under the law of a foreign country to perform functions equivalent to those performed by official liquidators under this Law or by trustees in bankruptcy under the Bankruptcy Law (1997 Revision);

1997 Revision

"limited partnership" means an ordinary limited partnership registered in accordance with section 49 of the Partnership Law (2013 Revision) or an exempted limited partnership registered in accordance with Section 9 of the Exempted Limited Partnership Law (2013 Revision);

2013 Revision

2013 Revision

"official liquidator" means the liquidator of a company which is being wound up by order of the Court or under the supervision of the Court and includes a provisional liquidator;

"prescribed" means prescribed by the Insolvency Rules Committee;

"professional service provider" means a person who contracts to provide general managerial or administrative services to a company on an annual or continuing basis;

"qualified insolvency practitioner" means a person holding the qualifications specified in the regulations made by the Insolvency Rules Committee under section 155 or such other qualifications as the Court considers appropriate for the conduct of the winding up of a company;

"Rules" mean rules prescribed by the Insolvency Rules Committee;

"shadow director" means, in relation to a company, any person in accordance with whose directions or instructions the directors of the company are accustomed to act, but the person is not deemed to be a shadow director by reason only that the directors act on advice given by him in a professional capacity; and

"winding up order" includes an order that a voluntary winding up continue under the supervision of the Court and references to a company being wound up by the Court includes a company which is being wound up under the supervision of the Court.

90.    A company may be wound up-

    (a)    compulsorily by order of the Court;

    (b)    voluntarily-

        (i)    by virtue of a special resolution;

        (ii)    because the period, if any, fixed for the duration of the company by its articles of association has expired; or

        (iii)    because the event, if any, has occurred, on the occurrence of which its articles of association provide that the company shall be wound up; or

    (c)    under the supervision of the Court.

Alternative modes of winding up

*Companies Law (2013 Revision)*

Jurisdiction of the Court

91.   The Court has jurisdiction to make winding up orders in respect of-

    (a)   an existing company;

    (b)   a company incorporated and registered under this Law;

    (c)   a body incorporated under any other law; and

    (d)   a foreign company which-

       (i)    has property located in the Islands;

       (ii)   is carrying on business in the Islands;

       (iii)  is the general partner of a limited partnership; or

       (iv)   is registered under Part IX.

### Winding up by the Court

Circumstances in which a company may be wound up by the Court

92.   A company may be wound up by the Court if-

    (a)   the company has passed a special resolution requiring the company to be wound up by the Court;

    (b)   the company does not commence its business within a year from its incorporation, or suspends its business for a whole year;

    (c)   the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association that the company is to be wound up;

    (d)   the company is unable to pay its debts; or

    (e)   the Court is of opinion that it is just and equitable that the company should be wound up.

Definition of inability to pay debts

93.   A company shall be deemed to be unable to pay its debts if-

    (a)   a creditor by assignment or otherwise to whom the company is indebted at law or in equity in a sum exceeding one hundred dollars then due, has served on the company by leaving at its registered office a demand under his hand requiring the company to pay the sum so due, and the company has for the space of three weeks succeeding the service of such demand, neglected to pay such sum, or to secure or compound for the same to the satisfaction of the creditor;

    (b)   execution of other process issued on a judgement, decree or order obtained in the Court in favour of any creditor at law or in equity in any proceedings instituted by such creditor against the company, is returned unsatisfied in whole or in part; or

    (c)   it is proved to the satisfaction of the Court that the company is unable to pay its debts.

Application for winding up

94.   (1)   An application to the Court for the winding up of a company shall be by petition presented either by-

*Companies Law (2013 Revision)*

    (a)  particulars of the company's assets and liabilities, including contingent and prospective liabilities;

    (b)  the names and addresses of any persons having possession of the company's assets;

    (c)  the assets of the company held by those persons;

    (d)  the names and addresses of the company's creditors;

    (e)  the securities held by those creditors;

    (f)  the dates when the securities were respectively given; and

    (g)  such further or other information that the liquidator may require.

(3)  The persons referred to in subsection (1) are-

    (a)  persons who are or have been directors or officers of the company;

    (b)  persons who are or have been professional service providers to the company; and

    (c)  persons who are or have been employees of the company, during the period of one year immediately preceding the relevant date.

(4)  Where any persons are required under this section to submit a statement of affairs to the liquidator, they shall do so, subject to subsection (5), before the end of the period of twenty-one days beginning with the day after that on which the prescribed notice of the requirement is given to them by the liquidator.

(5)  The liquidator may release a person from an obligation imposed on him under subsection (1) or, when giving the notice mentioned in subsection (4) or subsequently, the liquidator may extend the time for compliance; and if the liquidator refuses to extend the time for compliance, the Court may do so.

(6)  In this section-

"relevant date" means-

    (a)  in a case where a provisional liquidator is appointed, the date of his appointment; and

    (b)  in any other case, the commencement of the winding up.

(7)  A person who, without reasonable excuse, fails to comply with any obligation imposed under this section commits an offence and is liable on conviction to a fine of ten thousand dollars.

*Investigation by liquidator*

102. (1)  Where a winding up order is made by the Court, the liquidator shall be empowered to investigate-

    (a)  if the company has failed, the causes of the failure; and

    (b)  generally, the promotion, business, dealings and affairs of the company,

68

and to make such report, if any, to the Court as he thinks fit.

(2)  Subject to obtaining the directions of the Court, the liquidator shall have power to -

    (a)    assist the Authority and the Royal Cayman Islands Police Force to investigate the conduct of persons referred to in section 101(3); and

    (b)    institute and conduct a criminal prosecution of persons referred to in section 101(3).

(3)  Subject to obtaining the prior approval of the company's creditors, if it is insolvent, or its contributories, if it is solvent, the directions given under subsection (2) may include a direction that the whole or part of the costs of investigation and prosecution be paid out of the assets of the company.

103. (1)  This section applies to any person who, whether resident in the Islands or elsewhere-

<span style="float:right">Duty to co-operate and the private examination of relevant persons</span>

    (a)    has made or concurred with the statement of affairs;

    (b)    is or has been a director or officer of the company;

    (c)    is or was a professional service provider to the company;

    (d)    has acted as a controller, advisor or liquidator of the company or receiver or manager of its property;

    (e)    not being a person falling within paragraphs (a) to (c), is or has been concerned or has taken part in the promotion, or management of the company,

and such person is referred to in this section as the "relevant person".

(2)  It is the duty of every relevant person to co-operate with the official liquidator.

(3)  While a company is being wound up, the official liquidator may at any time before its dissolution apply to the Court for an order-

    (a)    for the examination of any relevant person; or

    (b)    that a relevant person transfer or deliver up to the liquidator any property or documents belonging to the company.

(4)  Unless the Court otherwise orders, the official liquidator shall make an application under subsection (3) if he is requested in accordance with the rules to do so by one-half, in value, of the company's creditors or contributories.

(5)  On an application made under subsection (3) (a), the Court may order that a relevant person-

    (a)    swear an affidavit in answer to written interrogatories;

*Companies Law (2013 Revision)*

**Remuneration of official liquidators**

109. (1)   The expenses properly incurred in the winding up, including the remuneration of the liquidator, are payable out of the company's assets in priority to all other claims.

(2)   There shall be paid to the official liquidator such remuneration, by way of percentage or otherwise, that the Court may direct acting in accordance with rules made under section 155; and if more liquidators than one are appointed such remuneration shall be distributed amongst them in such proportions as the Court directs.

**Function and powers of official liquidators**

110. (1)   It is the function of an official liquidator-

    (a)   to collect, realise and distribute the assets of the company to its creditors and, if there is a surplus, to the persons entitled to it; and

    (b)   to report to the company's creditors and contributories upon the affairs of the company and the manner in which it has been wound up.

(2)   The official liquidator may-

**Schedule 3**

    (a)   with the sanction of the Court, exercise any of the powers specified in Part I of Schedule 3; and

    (b)   with or without that sanction, exercise any of the general powers specified in Part II of Schedule 3.

(3)   The exercise by the liquidator of the powers conferred by this section is subject to the control of the Court, and subject to subsection (5), any creditor or contributory may apply to the Court with respect to the exercise or proposed exercise of such powers (hereinafter referred to as a "sanction application").

(4)   In the case of-

    (a)   a solvent company, a sanction application may only be made by a contributory and the creditors shall have no right to be heard;

    (b)   an insolvent company, a sanction application may only be made by a creditor and the contributories shall have no right to be heard; and

    (c)   a company whose solvency is doubtful, a sanction application may be made by both contributories and creditors and both contributories and creditors shall have a right to be heard.

(5)   For the purposes of this section, a person shall be treated as a related to a company if-

    (a)   he has acted for the company as a professional service provider;

    (b)   he is or was a shareholder or director of the company or of any other company in the same group as the company;

72

(c)    he has a direct or indirect beneficial interest in the shares of the company; or

(d)    he is a creditor or debtor of the company.

### General Powers of the Court

111. (1)    The Court may at any time after an order for winding up, on the application either of the liquidator or any creditor or contributory, and on proof to the satisfaction of the Court that all proceedings in the winding up ought to be stayed, make an order staying the proceedings either all together or for a limited time, on such terms and conditions as the Court thinks fit.

*Power to stay winding up*

(2)    The Court may at any time after the liquidation has commenced under section 116 (c), but before the final meeting has been held as provided for in section 127, on the application of the liquidator accompanied by-

(a)    a special resolution stating that the company will not be wound up and setting out the reasons for such decision;

(b)    proof of a recall notice published in the Gazette; and

(c)    such other documents as the Court may consider necessary,

make an order to recall the liquidation, place the company into active status and place the company back into good standing as it was prior to the commencement of liquidation under section 116(c), on such terms and conditions as the Court thinks fit.

(3)    A company shall, within seven days of the making of an order under this section, forward a copy of the order to the Registrar who shall enter it in the records relating to the company.

112. (1)    The liquidator shall settle a list of contributories, if any, for which purpose he shall have power to adjust the rights of contributories amongst themselves.

*Settlement of list of contributories*

(2)    In the case of a solvent liquidation of a company which has issued redeemable shares at prices based upon its net asset value from time to time, the liquidator shall have power to settle and, if necessary rectify the company's register of members, thereby adjusting the rights of members amongst themselves.

(3)    A contributory who is dissatisfied with the liquidator's determination may appeal to the Court against such determination.

113. (1)    The Court may, at any time after making a winding up order, and either before or after it has ascertained the sufficiency of the company's assets, make

*Power to make calls*

    (c)   the par value of all the shares held, in the case of contributories whose shares do not carry votes under the articles of association of the company and, where there are no par value shares, the net asset value of the company shown.

## Voluntary Winding up

116. A company incorporated and registered under this Law or an existing company may be wound up voluntarily-

*Circumstances in which a company may be wound up voluntarily*

    (a)   when the period, if any, fixed for the duration of the company by its memorandum or articles of association expires;

    (b)   if the event, if any, occurs, on the occurrence of which the memorandum or articles of association provide that the company is to be wound up;

    (c)   if the company resolves by special resolution that it be wound up voluntarily; or

    (d)   if the company in general meeting resolves by ordinary resolution that it be wound up voluntarily because it is unable to pay its debts as they fall due.

117. (1)   A voluntary winding up is deemed to commence-

*Commencement of winding up*

    (a)   at the time of the passing of the resolution for winding up; or

    (b)   on the expiry of the period or the occurrence of the event specified in the company's memorandum or articles of association,

notwithstanding that a supervision order is subsequently made by the Court.

    (2)   Subject to any contrary provision in its memorandum or articles of association, the voluntary winding up of an exempted limited duration company is taken to have commenced upon the expiry of a period of ninety days starting on-

    (a)   the death, insanity, bankruptcy, dissolution, withdrawal, retirement or resignation of a member of the company;

    (b)   the redemption, repurchase or cancellation of all the shares of a member of the company; or

    (c)   the occurrence of any event which, under the memorandum or articles of association of the company, terminates the membership of a member of the company,

unless there remain at least two members of the company and the company is continued in existence by the unanimous resolution of the remaining members pursuant to amended memorandum and articles of association adopted during that period of ninety days.

75

121. (1)   A voluntary liquidator may be removed from office by a resolution of the company in a general meeting convened especially for that purpose.

Removal of voluntary liquidators

(2)   A general meeting of the company for the purpose of considering a resolution to remove its voluntary liquidator may be convened by any shareholder or shareholders holding not less than one fifth of the company's issued share capital.

(3)   Whether or not a general meeting has been convened in accordance with subsection (2), any contributory may apply to the Court for an order that a voluntary liquidator be removed from office on the grounds that he is not a fit and proper person to hold office.

122. (1)   Where two or more persons are appointed as joint voluntary liquidators, they may resign by filing a notice of resignation with the Registrar, so long as at least one of them continues in office.

Resignation of voluntary liquidator

(2)   Except as provided in subsection (1), a voluntary liquidator wishing to resign shall-

    (a)   prepare a report and accounts; and

    (b)   convene a general meeting of the company for the purpose of accepting his resignation and releasing him from the performance of any further duties, and shall cease to hold office with effect from the date upon which the resolution is passed.

(3)   In the event that the company fails to pass a resolution accepting his resignation, the voluntary liquidator may apply to the Court for an order that he be released from the performance of any further duties.

123. (1)   Within twenty-eight days of the commencement of a voluntary winding up, the liquidator or, in the absence of any liquidator, the directors shall-

Notice of voluntary winding up

    (a)   file notice of the winding up with the Registrar;

    (b)   file the liquidator's consent to act with the Registrar;

    (c)   file the director's declaration of solvency with the Registrar (if the supervision of the court is not sought);

    (d)   in the case of a company carrying on a regulated business, serve notice of the winding up upon the Monetary Authority; and

    (e)   publish notice of the winding up in the Gazette.

(2)   A director or liquidator who fails to comply with this section commits an offence and is liable to a fine of ten thousand dollars.

124. (1)   Where a company is being wound up voluntarily its liquidator shall apply to the Court for an order that the liquidation continue under the supervision of the Court unless, within twenty-eight days of the commencement of the

Application for supervision order

liquidation, the directors have signed a declaration of solvency in the prescribed form in accordance with subsection (2).

(2) A declaration of solvency means a declaration or affidavit in the prescribed form to the effect that a full enquiry into the company's affairs has been made and that to the best of the directors' knowledge and belief the company will be able to pay its debts in full together with interest at the prescribed rate, within such period, not exceeding twelve months from the commencement of the winding up, as may be specified in the declaration.

(3) A person who knowingly makes a declaration under this section without having reasonable grounds for the opinion that the company will be able to pay its debts in full, together with interest at the prescribed rate, within the period specified commits an offence and is liable on summary conviction to a fine of ten thousand dollars and to imprisonment for two years.

**Avoidance of share transfers**

125. Any transfer of shares, not being a transfer with the sanction of the liquidator, and any alteration in the status of the company's members made after the commencement of a voluntary winding up is void.

**General meeting at year's end**

126. (1)   In the event of a voluntary winding up continuing for more than one year, the liquidators shall summon a general meeting of the company at the end of the first year from the commencement of the winding up and at the end of each succeeding year and such meetings shall be held within three months of each anniversary of the commencement of the liquidation.

(2)   At each meeting the liquidator shall lay before the meeting a report and account of his acts and dealings and the conduct of the winding up during the preceding year.

(3)   A liquidator who fails to comply with this section commits an offence and is liable on conviction to a fine of ten thousand dollars.

**Final meeting prior to dissolution**

127. (1)   As soon as the company's affairs are fully wound up, the liquidator shall make a report and an account of the winding up showing how it has been conducted and how the company's property has been disposed off and thereupon shall call a general meeting of the company for the purpose of laying before it the account and giving an explanation for it.

(2)   At least twenty-one days before the meeting the liquidator shall send a notice specifying the time, place and object of the meeting to each contributory in any manner authorised by the company's articles of association and published in the Gazette.

*Companies Law (2013 Revision)*

(4)  If the company fails to approve the liquidator's remuneration and expenses or the liquidator is dissatisfied with the decision of the company, he may apply to the Court which shall fix the rate and amount of his remuneration and expenses.

### Winding up subject to the supervision of the Court

Application for supervision order

131.  When a resolution has been passed by a company to wind up voluntarily, the liquidator or any contributory or creditor may apply to the Court for an order for the continuation of the winding up under the supervision of the Court, notwithstanding that the declaration of solvency has been made in accordance with section 124, on the grounds that-

(a)  the company is or is likely to become insolvent; or

(b)  the supervision of the Court will facilitate a more effective, economic or expeditious liquidation of the company in the interests of the contributories and creditors.

Appointment of official liquidator

132. (1)  When making a supervision order the Court-

(a)  shall appoint one or more qualified insolvency practitioners; and

(b)  may, in addition, appoint one or more foreign practitioners,

as liquidator or liquidators of the company and section 105 shall apply as if the Court had made a winding up order.

(2)  Unless a voluntary liquidator is appointed as an official liquidator, he shall prepare a final report and accounts within twenty-eight days from the date of the supervision order.

Effect of supervision order

133.  A supervision order shall take effect for all purposes as if it was an order that the company be wound up by the Court except that-

(a)  the liquidation commenced in accordance with section 117; and

(b)  the prior actions of the voluntary liquidator shall be valid and binding upon the company and its official liquidator.

### Offences of fraud, etc.

Fraud, etc. in anticipation of winding up

134. (1)  Where a company is ordered to be wound up by the Court, or passes a resolution for voluntary winding up, any person, who is or was an officer, professional service provider, voluntary liquidator or controller of the company and who, within the twelve months immediately preceding the commencement of the winding up, has-

80

**General provisions**

138. (1)   Where any person has in his possession any property or documents to which the company appears to be entitled, the Court may require that person to pay, transfer or deliver such property or documents to the official liquidator.

*Getting in the company's property*

(2)   Where the official liquidator seizes or disposes of any property which he reasonably believed belonged to the company, he shall not be personally liable for any loss or damage caused to its true owner except in so far as such losses or damage is caused by his own negligence.

139. (1)   All debts payable on a contingency and all claims against the company whether present or future, certain or contingent, ascertained or sounding only in damages, shall be admissible to proof against the company and the official liquidator shall make a just estimate so far as is possible of the value of all such debts or claims as may be subject to any contingency or sound only in damages or which for some other reason do not bear a certain value.

*Provable debts*

(2)   Foreign taxes, fines and penalties shall be admissible to proof against the company only if and to the extent that a judgement in respect of the same would be enforceable against the company pursuant to the Foreign Judgements Reciprocal Enforcement Law (1996 Revision) or any laws permitting the enforcement of foreign taxes, fines and penalties.

*1996 Revision*

140. (1)   Subject to subsection (2), the property of the company shall be applied in satisfaction of its liabilities *pari passu* and subject thereto shall be distributed amongst the members according to their rights and interests in the company.

*Distribution of the company's property*

(2)   The collection in and application of the property of the company referred to in subsection (1) is without prejudice to and after taking into account and giving effect to the rights of preferred and secured creditors and to any agreement between the company and any creditors that the claims of such creditors shall be subordinated or otherwise deferred to the claims of any other creditors and to any contractual rights of set-off or netting of claims between the company and any person or persons (including without limitation any bilateral or any multi-lateral set-off or netting arrangements between the company and any person or persons) and subject to any agreement between the company and any person or persons to waive or limit the same.

(3)   In the absence of any contractual right of set-off or non set-off, an account shall be taken of what is due from each party to the other in respect of their mutual dealings, and the sums due from one party shall be set-off against the sums due from the other.

83

*Companies Law (2013 Revision)*

(4)  Sums due from the company to another party shall not be included in the account taken under subsection (3) if that other party had notice at the time they became due that a petition for the winding up of the company was pending.

(5)  Only the balance, if any, of the account taken under subsection (3) shall be provable in the liquidation or, as the case may be, payable to the liquidator as part of the assets.

**Preferential debts Schedule 2**

141. (1)  In the case of an insolvent company, the debts described in Schedule 2 shall be paid in priority to all other debts.

(2)  The preferential debts shall-

(a)  rank equally amongst themselves and be paid in full unless the assets available, after having exercised any rights of set-off or netting of claims, are insufficient to meet them in which case they shall abate in equal proportions; and

(b)  so far as the assets of the company available for payment of general creditors are insufficient to meet them, have priority over the claims of holders of debentures secured by, or holders of any floating charge created by the company, and be paid accordingly out of any property comprised in or subject to that charge.

**Secured creditors**

142. (1)  Notwithstanding that a winding up order has been made, a creditor who has security over the whole or part of the assets of a company is entitled to enforce his security without the leave of the Court and without reference to the liquidator.

(2)  Where the liquidator sells assets on behalf of a secured creditor, he is entitled to deduct from the proceeds of sale a sum by way of remuneration equivalent to that which is or would be payable under section 109.

**Preferential charge on goods distrained**

143.  In the event of a landlord or other person entitled to receive rent distraining or having distrained on any goods or effects of the company within three months preceding the date of the winding up order, the debts to which priority is given by section 141 shall be a first charge on the goods or effects so distrained on or the proceeds of sale thereof.

**Effect of execution or attachment**

144. (1)  Where a creditor has issued execution against the goods or land of a company or has attached any debt due to it, and the company is subsequently wound up, he is not entitled to retain the benefit of the execution or attachment against the liquidator unless he has completed the execution or attachment before the commencement of the winding up.

(2)  Notwithstanding subsection (1)-

84

*Companies Law (2013 Revision)*

(d)    a deposit which is a client account, and which is designated as such, shall be treated as a separate deposit, made by the client of the depositor, of amounts corresponding to the amount to which such client is entitled; and

(e)    the amount of each eligible deposit shall be reduced by the amount of any liability of the depositor to the bank in respect of which a right of set-off existed at the date of the presentation of the petition for the winding up of the bank, or the commencement of the voluntary winding up of the bank.

Category 3: Taxes due to the Government

2012 Revision

1.    Sums due in respect of duty and penalties payable under the Customs Law (2012 Revision).

2.    Sums due in respect of fees payable under this Law.

2011 Revisions

3.    Sums due in respect of duty and penalties payable under the Stamp Duty Law (2011 Revision).

4.    Sums due in respect of licence fees payable under the regulatory laws.

2013 Revision

5.    Sums due in respect of taxes payable under the Tourist Accommodation (Taxation) Law (2013 Revision).

## SCHEDULE 3

### Powers of Liquidators

Section 110

### Part I

### Powers exercisable with sanction

1.    Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

2.    Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

3.    Power to dispose of any property of the company to a person who is or was related to the company.

160

4.    Power to pay any class of creditors in full.

5.    Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

6.    Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

7.    Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

8.    The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

9.    The power to raise or borrow money and grant securities therefor over the property of the company.

10.    The power to engage staff (whether or not as employees of the company) to assist him in the performance of his functions.

11.    The power to engage attorneys and other professionally qualified persons to assist him in the performance of his functions.

## Part II

### Powers exercisable without sanction

1.    The power to take possession of, collect and get in the property of the company and for that purpose to take all such proceedings as he considers necessary.

2.    The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

3.    The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive

*Companies Law (2013 Revision)*

dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.

4.    The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

5.    The power to promote a scheme of arrangement pursuant to section 86.

6.    The power to convene meetings of creditors and contributories.

7.    The power to do all other things incidental to the exercise of his powers.

## SCHEDULE 4

section 40B

### APPROVED STOCK EXCHANGES

The following are approved stock exchanges -

| | | |
|---|---|---|
| American Stock Exchange (AMEX) | Frankfurt Stock Exchange | New Zealand Stock Exchange |
| Athens Stock Exchange | Fukoka Stock Exchange | OMX Nordic Exchange |
| Australian Securities Exchange | The Gretai Securities Market of Taiwan | Osaka Securities Exchange |
| Barcelona Stock Exchange | Hamburg and Hannover Stock Exchange | Oslo Stock Exchange |
| Berlin Stock Exchange | Hong Kong Stock Exchange (including the Growth Enterprise Market) | Philadelphia Stock Exchange |
| Bermuda Stock Exchange | International Securities Exchange | Rio de Janeiro Stock Exchange |
| Bilbao Stock Exchange | Irish Stock Exchange | Sao Paulo Stock Exchange (Bovespa) |

162